```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF ALABAMA
                          NORTHERN DIVISION
```

**MILDRED J. BENNETT**            *
                                  *
    **Plaintiff,**            *
                                  *
vs.                               *  CIVIL ACTION 10-00005-B
                                  *
**MICHAEL J. ASTRUE,**            *
**Commissioner of**               *
**Social Security,**              *
                                  *
    **Defendant.**            *

## ORDER

Plaintiff Mildred J. Bennett ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. On September 17, 2010, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, this case was referred to the undersigned to conduct all proceedings through entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 20). Oral argument was waived. Upon careful consideration of the administrative record, and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED and REMANDED.**

### I. Procedural History

Plaintiff protectively filed an application for supplemental security income on March 22, 2007. (Tr. 42, 79-81). Plaintiff alleges that she has been disabled since January 1, 2007 due to

headaches, high blood pressure, shortness of breath, heart problems, bad eyesight, fibroid tumors, and muscle spasms. (Tr. 29, 89). Plaintiff's application was denied at the initial stage, and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 42-43, 55). On March 10, 2009, Administrative Law Judge Charles A. Thigpen ("ALJ Thigpen") held an administrative hearing, which was attended by Plaintiff, her representative, and a vocational expert. (Tr. 24-41). On May 13, 2009, ALJ Thigpen issued an unfavorable decision finding that Plaintiff is not disabled. (Tr. 13-22).

Plaintiff sought review by the Appeals Council ("AC"), and on November 9, 2009, her request was denied. In denying Plaintiff's request, the AC held as follows:

> We also looked at the confidential psychological examination performed by Dr. Donald W. Blanton, Ph.D., dated June 25, 2009 which would indicate the existence of a mental impairment. However, no mental impairment was alleged or established through the date of the Administrative Law Judge's decision, May 13, 2009. The Administrative Law Judge decided your case through May 13, 2009. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 13, 2009.

(Tr. 2). Once the AC denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

2

**II. Issues on Appeal**

A. Whether the ALJ erred in determining Plaintiff's RFC without a functional capacity assessment by a treating, examining or non-examining physician.

B. Whether the ALJ erred in failing to pose an appropriate hypothetical to the VE.

C. Whether the Appeals Council erred in failing to remand the case for proper consideration of submitted evidence.

**III. Factual Background**

Plaintiff was born on June 12, 1957, and has a tenth-grade education. (Tr. 79, 95). Plaintiff previously worked as a food server, fish fileter, and as a packer for a factory. (Tr. 28-29, 90). Plaintiff testified that she has not been able to work since January 1, 2007, because of dizziness, back pain, headaches, shortness of breath, her legs, swelling in her feet and an inability to stand very long. (Tr. 29). Plaintiff further testified that she has high blood pressure that is sometimes controlled by medication, and that she has arthritis all over. (Tr. 32). According to Plaintiff, she can cook and perform limited household chores, but has to take breaks due to shortness of breath. (Tr. 32-33). Plaintiff also testified that her daughter helps her with chores around the house. (Tr. 36).

    **IV. Analysis**

        **A. Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In the case sub judice, the ALJ determined that Plaintiff has

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

not engaged in substantial gainful activity since March 22, 2007, her application date, and that she has the following severe impairments: high blood pressure, headaches, enlarged thyroid and tachycardia. (Tr. 18). The ALJ concluded that Plaintiff's impairments, though severe, do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 20). The ALJ also found that Plaintiff's allegations regarding the intensity, persistence and limiting effects of her alleged symptoms were not entirely credible, and that Plaintiff retained the residual functional capacity ("RFC") to perform medium work. (Tr. 20, 21). The ALJ concluded that Plaintiff is able to return to her past relevant work as a packager and fish fileter; thus, she is not disabled. (Tr. 21-22).

The relevant medical evidence[3] includes office notes from Maurice J. Fitzgerald, M.D., from July 14, 1997 to July 14, 2008. Plaintiff was diagnosed with menorrhagia with uterine fibroids; anemia; chronic headaches; and hypertension, controlled.

Plaintiff was also treated by Edgar Brown, M.D., at Uniontown Health Center from August 9, 2002 through at least March 2, 2009. (Tr. 198, 200, 202, 230-232, 308-310). She was diagnosed with anemia

---

[3] While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

and dysfunctional uterine bleeding (perimenopausal). (Tr. 202). During her treatment with Dr. Brown, Plaintiff was also diagnosed with overactive bladder, dysmenorrheal, trichomoniasis[4] and thyroid nodule. (Tr. 308-309).

Plaintiff sought treatment at Vaughn Regional Medical Center Emergency Department on August 26, 2006. She complained of a headache. Her physical exam was normal, and she was diagnosed with migraine headache and hypertension, was given Clonidine[5] and Darvocet[6], and was released in an improved condition. (Tr. 239-245).

Plaintiff sought treatment at Bryant W. Whitfield Memorial Hospital on January 22, 2007. She complained of sudden onset of shortness of breath with dizziness, nausea, lightheadedness and nonproductive cough. She was diagnosed with viral syndrome with anxiety and obesity. (Tr. 257-263). During an April 4, 2007 visit to Bryant W. Whitfield Memorial Hospital, Plaintiff was diagnosed with angioedema in her tongue and given Benadryl. (Tr. 247-256).

Plaintiff was treated by Dr. Mantle from June 6, 2007 to February 27, 2009. She was diagnosed with hypertension, headache, abnormal

---

[4] Trichomoniasis is a human sexually transmitted disease occurring especially as vaginitis. See www.nlm.nih.gov. (Last visited December 22, 2010).

[5] Clonidine decreases the levels of certain chemicals in your blood, and is used for treating high blood pressure. See www.drugs.com. (Last visited December 22, 2010).

[6] Darvocet is a combination of propoxyphene and acetaminophen, used to treat mild to moderate pain. See www.drugs.com. (Last visited December 22, 2010).

electrocardiogram, arrhythmia-tachycardia, and history of arm pain, shortness of breath, and edema.(Tr. 273-298). During a follow-up visit on July 21, 2008, Dr. Mantle noted that plaintiff was doing well without new or changing complaints. Her physical exam was normal except for an enlarged thyroid. (Tr. 300-302, 303-304).

Following the ALJ's decision, Plaintiff submitted an additional document to the AC for review, namely the psychological evaluation completed by Donald W. Blanton, Ph.D., and dated June 25, 2009. In his report, Dr. Blanton states that on mental status examination, Plaintiff was very slow to respond to questions and that her mental retardation was obvious. According to Dr. Blanton, Plaintiff reported that she finished the tenth grade, and that she had been unable to pass the GED test despite several attempts. He further noted that Plaintiff's thoughts and conversation were simple but logical, her associations were intact, and her affect was flat but appropriate, with no confusion noted. He opined that her insight was limited and her judgment was fair for work and financial type decisions.

The evaluation reflects that Dr. Blanton administered the Wechsler Adult Intelligence Scale, Fourth Edition (hereinafter "WAIS-IV"), and that the test results show Plaintiff's verbal comprehension as 70, perceptual reasoning as 67, working memory as 71, processing speed as 71, and full scale IQ score as 64. Dr. Blanton

noted that this score places Plaintiff in the mild range of mental retardation. Dr. Blanton also administered the Wide-Range Achievement Test (Revised III), the results of which show that Plaintiff's reading and spelling are on a fourth grade level, and her arithmetic is on a fifth grade level. Dr. Blanton opined that the results were a valid assessment of Plaintiff's current level of intellectual functioning. He noted that there were no distracting factors during the testing, and that Plaintiff appeared to put forth a good effort. (Tr. 384-387).

1. **Whether the Appeals Council erred in failing to remand the case for proper consideration of submitted evidence.**

Plaintiff contends that this case should be reversed and remanded due to new and material evidence presented to the AC, namely the psychological evaluation completed by Dr. Blanton and dated June 25, 2009. According to Plaintiff, the evaluation reflects that on the WAIS-IV, her full scale IQ score was 64, and Dr. Blanton opined that the scoring reflects a mild range of mental retardation. Plaintiff argues that the AC's determination that Dr. Blanton's report is not relevant because it is dated after the date of the ALJ's decision is error, because mild mental retardation is a lifelong condition; thus, the evaluation is relevant to the period prior to the ALJ's decision. (Doc. 13 at 5-6). Plaintiff also argues that she meets Listing 12.05C[7] because she has a full scale IQ of 64,

---

[7] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 ("Listing

9

and additional physical impairments that are severe. The Commissioner responds that Plaintiff never alleged a mental impairment when she applied for SSI benefits or during the administrative hearing. He further argues that nothing in the evidence submitted to the AC would have changed the administrative decision because Plaintiff has not shown deficits in adaptive behavior initially manifested during the developmental period.

"When a claimant challenges both the ALJ's decision to deny benefits and the decision of the AC to deny review based on new evidence, 'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.'" Poellnitz v. Astrue, 349 Fed. Appx. 500, 501(11th Cir. 2009)(quoting Ingram v. Comm'r of Social Security Administration, 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007). Generally, a claimant is allowed to present new evidence at each stage of the administrative process. Ingram, 496 F.3d at 1260-61; Poellnitz, 349 Fed. Appx. at 503. "The AC must consider new, material and chronically relevant evidence and must review the

---

12.05") is the listing category for mental retardation, and begins with an introductory paragraph, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. The listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Id. Subsection C requires a claimant to demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function." Id. at § 12.05C.

10

case if the ALJ's actions, findings or conclusion is contrary to the weight of the evidence currently of record." Id. at 503 (quoting 20 C.F.R. 404.970(b)).

Section 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods: sentence four or sentence six of the statutory provisions. Poellnitz, 349 Fed. Appx. at 503-504. Sentence six remands are "available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." Ingram, 496 F. 3d at 1267. Sentence six "does not grant a district court the power to remand for reconsideration of evidence previously considered by the [AC]." Id. at 1269. Thus, remand to the AC is warranted under sentence six when 1) new, noncumlative evidence exists, 2) the evidence is material, and 3) good cause exists for the claimant's failure to submit the evidence at the administrative level. Id. at 1267. A sentence four remand is proper when the evidence was properly before the Commissioner, but "the [AC] did not adequately consider the additional evidence." Id. at 1268 (quotation omitted). To warrant a sentence four remand, the Court must either find that the decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Poellnitz, 349 Fed. Appx. at 504.

In Ingram, the Eleventh Circuit suggested that the "good cause" standard is not germane to sentence four situations where evidence

is submitted to the AC and incorporated into the administrative record. Ingram, 496 F. 3d at 1265-69. Following Ingram, a panel of the Court in Poellnitz, observed that "our precedent has not firmly established whether a claimant who first presents additional evidence to the AC is required to demonstrate good cause in order to warrant remand." Poellnitz, 349 Fed. Appx. at 504. Later, in Robinson v. Astrue, 365 Fed. Appx. 993 (11th Cir. 2010) yet another panel of the Court held that "[w]hen reviewing the Appeals Council's denial of review, we must 'look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Council must consider in making its decision whether to review an ALJ's decision.' ... 'New' evidence is evidence that is non-cumulative and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson, 365 Fed. Appx. at 996 (quoting Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998) and Milano v. Bowen, 809 F. 2d 763, 766 (11th Cir. 1987).

Based upon the decisions in Ingram, Poellnitz and Robinson, it is not clear whether there remains a "good cause" requirement for sentence four remands within this Circuit. The undersigned need not resolve this issue because Plaintiff has established good cause for not presenting Dr. Blanton's evaluation. The evaluation did not exist at the time the ALJ's decision was rendered. The report is dated June 25, 2009, some five weeks after the date of the ALJ's

opinion.

Notwithstanding the Commissioner's assertions to the contrary, Dr. Blanton's report is clearly non-cumlative and material. While it is true that Plaintiff did not list mental retardation in her application or at the hearing, Plaintiff is entitled to present new medical evidence at every stage of the administrative process. The evaluation contains information which reflects that Plaintiff has mental retardation. This information is non-cumlative because there is no other medical evidence in the record that discusses Plaintiff's mental condition. Moreover, the evaluation is chronically relevant because Plaintiff was evaluated a mere six weeks after the ALJ's decision, she was diagnosed with mental retardation, and there is nothing to suggest that her mental retardation is a condition with a recent onset as opposed to one which has existed throughout most of Plaintiff's life, including the period under review by the ALJ.

Defendant's argument that there is no reasonable possibility that the new evidence would change the administrative result is without merit. For presumptive disability under 12.05C, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. Id. at 1219 1220. In Hodges v. Barnhart, 276 F. 3d 1265(11th Cir. 2001), the Eleventh Circuit held that there is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant

established a valid IQ score between 60-70. Hodges, 276 F.3d at 1266, 1268-69. According to the court, absent evidence of a sudden trauma causing mental retardation, it was error for the ALJ not to recognize the presumption that the claimant manifested a mental impairment before the age of 22. Id.

Later, in Grant v. Astrue, 255 Fed. Appx. 374, 2007 U. S. App. LEXIS 26540 (11th Cir. 2007), the plaintiff argued that the ALJ applied an improper legal standard in holding that she did not demonstrate deficits in more than one area of adaptive functioning before the age of 22; and therefore, did not meet Listing 12.05C where she had valid IQ scores and possessed a physical or mental impairment that imposed an additional and significant work-related limitation. Id. at 375. Upon review, the Eleventh Circuit held that the ALJ erred because he did not give the plaintiff the benefit of the presumption recognized in Hodges, but instead required her to demonstrate deficits in more than one area of adaptive functioning before the age of 22. According to the Court, the plaintiff was entitled to the benefit of the presumption, and upon remand, the ALJ was to determine whether there was sufficient evidence to rebut the presumption that the plaintiff manifested deficits in adaptive functioning before the age of 22. Id.

In the case at hand, Plaintiff has presented evidence of WAIS-IV test results reflecting Plaintiff's IQ scores between 60-70. According to Dr. Blanton's report, the WAIS-IV results showed that

14

Plaintiff had a 70 in Verbal Comprehension, 67 in Perceptual Reasoning, 71 in Working Memory, 71 in Processing Speed, and a 64 Full Scale score.  Dr. Blanton opined the scores to be a valid assessment of Plaintiff's current level of intellectual functioning, and that her mental retardation was a lifelong condition.  (Tr. 385-387).

As noted supra, the court in Hodges held that a valid IQ score of 60-70 inclusive creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning before the age of 22. While the Commissioner argues that Plaintiff "failed to meet her burden of providing evidence of deficits in adaptive behavior initially manifested during the developmental period. . .,"  it is clear from Hodges that such burden is not on Plaintiff, but rather that Plaintiff is entitled to the benefit of the presumption.  It is the ALJ's duty to determine whether there is sufficient evidence to rebut the presumption. Id. at 375. The report of a full scale IQ score of 64, which Dr. Blanton found to be valid, and the ALJ's determination that Plaintiff has other severe impairments, creates a reasonable possibility that Plaintiff meets the requirements of Listing § 12.05C. Thus, this new evidence could change the administrative result.  Additional evidence in the record adds credence to a determination that Plaintiff is mildly mentally retarded.  Plaintiff reported to Dr. Blanton that she finished the tenth grade, and that despite a number of attempts, she was not able

to pass the GED exam.  Additionally, the VE noted that while Plaintiff did have some past work activity, it was "nothing incredibly significant, certainly nothing that required any training and nothing that's transferable." (Tr. 37).  Accordingly, based on the record before the Court, the undersigned finds that there is a reasonable likelihood that consideration of Dr. Blanton's report would change the administrative result[8].  Accordingly, the AC's decision not to remand this case for consideration of Dr. Blanton's report was error.

**V.    Conclusion**

Upon careful consideration of the administrative record, and memoranda of the parties, and for the reasons set forth above, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income be **REVERSED and REMANDED.**

DONE this **22nd** day of **December, 2010.**

                                             /s/ SONJA F. BIVINS
                                    **UNITED STATES MAGISTRATE JUDGE**

---

[8] While the undersigned finds that Dr. Blanton's report is new and material, and that there is a reasonable likelihood that consideration of it would change the administrative outcome, the undersigned does not suggest that Plaintiff in fact meets Listing 12.05C.  This is a determination to be made by the ALJ upon proper consideration of Dr. Blanton's report.